**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BONIFACIO SANCHEZ,

   Plaintiff,

v.                   No. CV 17-543 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Bonifacio Sanchez's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 15), filed October 30, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 17), filed December 19, 2017; and Mr. Sanchez's *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* (the "Reply"), (Doc. 18), filed January 12, 2018.

Mr. Sanchez filed an application for disability insurance benefits on March 13, 2012, alleging disability beginning June 13, 2009. (Administrative Record "AR" 225). Mr. Sanchez claimed he was limited in his ability to work due to: heart problems, diabetes type II, and post-traumatic stress disorder ("PTSD"). (AR 268). Mr. Sanchez's application was denied initially on June 14, 2012, and upon reconsideration on January 17, 2013. (AR 106). Mr. Sanchez requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 17, 2014, before ALJ Barry O'Melinn. (AR 55). Mr. Sanchez and Vocational Expert ("VE") Mary Diane Weber testified at the hearing,

and Mr. Sanchez was represented by non-attorney representative Roy Archuleta. (AR 57-86).

On July 11, 2014, ALJ O'Melinn issued his decision finding that Mr. Sanchez had three severe impairments: PTSD, major depressive disorder, and hearing disorder. (AR 108). However, ALJ O'Melinn found Mr. Sanchez was able to perform his past relevant work, and, therefore, found that he was not disabled between June 13, 2009 (his alleged disability onset date) through December 31, 2010 (the date he was last insured). (AR 106-13). Mr. Sanchez then requested review by the Appeals Council, (AR 185), which was granted on September 21, 2015 (AR 119). The Appeals Council found that ALJ O'Melinn's decision was inadequate for the following reasons: (1) the residual functional capacity ("RFC") determination did not adequately describe the limitations that correspond to Mr. Sanchez's severe impairments; (2) the RFC did not account for the exertional and nonexertional limitations found by the state agency medical consultant; (3) the finding that Mr. Sanchez's hearing impairment did not affect his ability to work is inconsistent with the finding that the hearing impairment was severe; and (4) the finding that Mr. Sanchez was able to perform his past relevant work through the date he was last insured was not supported by the record and was inconsistent with the VE's testimony. (AR 120-21). The Appeals Council vacated ALJ O'Melinn's decision and remanded the case to an ALJ with directions to further consider Mr. Sanchez's RFC and his ability to perform his past relevant work. (AR 121-22).

After the remand, ALJ Gerald L. Meyer held a second hearing on March 14, 2016. (AR 35). Again, Mr. Sanchez and VE Weber testified at the hearing, and Mr. Sanchez was represented by non-attorney representative Roy Archuleta. (37-54). On

May 11, 2016, ALJ Meyer issued his decision finding that Mr. Sanchez had no severe impairments, so he was not disabled at any time between June 13, 2009 (his alleged disability onset date) through December 31, 2010 (the date he was last insured). (AR 22-28). Mr. Sanchez requested review of ALJ Meyer's decision by the Appeals Council, (AR 185), which was denied, (AR 1-4), making ALJ Meyer's decision the Commissioner's final decision for purposes of this appeal.

Mr. Sanchez, who is now represented by attorney Francesca MacDowell, argues in his Motion that ALJ Meyer erred in finding Mr. Sanchez's impairments are not severe and in his credibility finding. (Doc. 15 at 2-17). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Meyer erred in finding that Mr. Sanchez does not have any severe impairments, the Court finds that Mr. Sanchez's Motion should be **GRANTED**.

**I. Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal

standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II. Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 404.1505(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Mr. Sanchez claimed he was limited in his ability to work due to: heart problems, diabetes type II, and PTSD. (AR 268). At step one, ALJ Meyer determined Mr. Sanchez had not engaged in substantial gainful activity since his alleged onset date of June 13, 2009 through his date last insured of December 31, 2010 ("the relevant time period"). (AR 24). At step two, ALJ Meyer found that Mr. Sanchez had the following medically

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

5

determinable impairments: diabetes mellitus, anxiety disorder, PTSD, osteoporosis, hearing problems, and coronary artery disease. *Id.* However, ALJ Meyer found that during the relevant time period Mr. Sanchez did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months. Therefore, ALJ Meyer found that Mr. Sanchez did not have a severe impairment or combination of impairments. *Id.*

In support of this finding, ALJ Meyer stated that he considered Mr. Sanchez's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-4p. (AR 25). ALJ Meyer also stated that he considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* ALJ Meyer reviewed the medical evidence relating to Mr. Sanchez's June 17, 2009, cardiac catheterization, stent placement, and balloon angioplasty. (AR 25-26). Further, ALJ Meyer reviewed evidence relating to Mr. Sanchez's shoulder pain, vision problems, diabetes, osteopenia, hearing problems, and mental impairments. (AR 26-27). ALJ Meyer found that Mr. Sanchez's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the evidence in the record. (AR 27-28).

With regard to opinion evidence, ALJ Meyer gave "some weight" to the opinions provided by the state agency medical examiners, and noted that "no treating or examining physician has indicated that the claimant has such overwhelming symptoms sufficient to be declared disabled prior to the claimant's date last insured." (AR 28). ALJ Meyer concluded that Mr. Sanchez does not have a severe impairment or combination

6

of impairments. *Id.* Because ALJ Meyer found that Mr. Sanchez did not have any severe impairments at step two, he did not complete any of the other steps in the SEP, and found that Mr. Sanchez was not under a disability at any time during the relevant time period. *Id.*

### IV. Analysis

Mr. Sanchez claims ALJ Meyer erred at step two because he applied the wrong legal standard and because Mr. Sanchez met his *de miminis* burden by presenting evidence that he is limited in his ability to work. (Doc. 15 at 3-15). In response, the Commissioner contends ALJ Meyer did not err at step two because the evidence in the record does not establish that Mr. Sanchez had a severe impairment during the relevant time period. (Doc. 17 at 3-9).

At step two, the ALJ determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). A claimant's impairment or combination of impairments is severe if it "significantly limits her ability to do basic work activities." *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) (unpublished). Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987); *see also* SSR 85-28, 1985 WL 56856, at *2. Therefore, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (quotations omitted).

Given the purpose behind step two, "case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 Fed. Appx. 674, 676-77 (10th Cir. 2004) (unpublished). The claimant has the burden of proof at step two, and, while he or she must show more than the mere presence of an impairment, the claimant need only make a *de miminis* showing of a severe impairment to move on to further steps in the analysis. *See Langley*, 113 F.3d at 1123. Moreover, the ALJ may make a finding of non-severity at step two only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have more than a minimal effect on an individual's ability to work. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). The ALJ may not deny a claim at step two on the basis of insufficient evidence; instead the ALJ must determine that the evidence clearly establishes that the impairment is not severe. SSR 85-28, 1985 WL 56856 at *3-4 ("A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe. . . . If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.").

### A. ALJ Meyer Failed to Apply the Correct Legal Standard

Mr. Sanchez first contends that ALJ Meyer applied the incorrect legal standard in making his step two findings. (Doc. 15 at 4-6). Mr. Sanchez argues ALJ Meyer erred by adopting the opinions of non-examining state agency doctors who found there was insufficient evidence to establish a severe impairment. *Id.* at 4-5 (citing AR 28, 89-91, 98). Mr. Sanchez also contends ALJ Meyer erred by stating that "no treating or examining physician has indicated that [Mr. Sanchez] has such overwhelming

8

symptoms sufficient to be declared disabled prior to the date last insured." *Id.* 4-5 (quoting AR 28). The Commissioner did not address this argument in her response.

The Tenth Circuit has made it clear that a claimant must only make a *de minimis* showing of a severe impairment at step two, which is a "nondemanding standard." *Hawkins*, 113 F.3d at 1169. Therefore, an ALJ may deny a claim at step two only if the medical evidence clearly establishes that a claimant's impairments "do not have more than a minimal effect on the [claimant's] physical or mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *3.

Here, ALJ Meyer considered evidence regarding Mr. Sanchez's heart, hearing, vision, hand, and mental impairments, and concluded that the evidence "fails to establish a severe impairment prior to the claimant's date last insured." (AR 25). However, ALJ Meyer did not state that the evidence clearly establishes that Mr. Sanchez's impairments do not have more than a minimal effect on his ability to perform basic work activities. Instead, ALJ Meyer explained why he found certain evidence more persuasive than other evidence in the record, which is not equivalent to a conclusion that is "clearly established by medical evidence," as required by SSR 85-28. *See Gosch v. Astrue*, No. Civ. 09-1349-JWL, 2011 WL 1899289, at *6 (D. Kan. May 19, 2011) (unpublished) (holding that because SSR 85-28 requires a finding of nonseverity to be clearly established by medical evidence, a denial at step two is inappropriate where the record evidence "might be amenable to more than one interpretation" or "the medical evidence is equivocal").

In addition, the only opinion evidence ALJ Meyer relied on was that of the state agency medical examiners. (AR 28). ALJ Meyer stated that he "generally concurred

9

with" their opinions, and gave their opinions "some weight." *Id.* ALJ Meyer did not state which portions of the state agency examiners' opinions he was assigning this weight, which does not allow the Court to meaningfully review his decision. *See Langley*, 373 F.3d at 1123 (an ALJ's reasons for adopting or rejecting an opinion must be "sufficiently specific" to allow for meaningful judicial review). Moreover, these examiners both found that there is insufficient evidence prior to the date Mr. Sanchez was last insured to evaluate his ability to function. (AR 90-91, 98-99). Because SSR 85-28 requires more than a finding that the evidence is insufficient to determine whether or not an impairment is severe, ALJ Meyer's reliance on these opinions for this finding is legal error. Further, ALJ Meyer's statement that "no treating or examining physician has indicated that [Mr. Sanchez] has such overwhelming symptoms sufficient to be declared disabled prior to the date last insured" misstates the legal standard at step two as requiring more than a *de miminis* showing by Mr. Sanchez. (AR 28).

Based on the foregoing, the Court finds that ALJ Meyer failed to account for the fact that Mr. Sanchez has only a *de minimis* burden of proof at step two, or for the fact that the ALJ can only find an impairment "not severe" if this finding is "clearly established by medical evidence." SSR 85-28, 1985 WL 56856, at *3. Therefore, ALJ Meyer applied the wrong legal standard in denying Mr. Sanchez's claim at step two.

### B. ALJ Meyer Erred in his Consideration of the Evidence

Next, Mr. Sanchez argues that ALJ Meyer's finding of non-severity is not supported by substantial evidence, and that he met his *de miminis* burden at step two by presenting evidence of how his heart, hearing, vision, hand, and mental impairments affect his ability to perform basic work activities. (Doc. 15 at 7-17). In response, the

10

Commissioner argues that the evidence Mr. Sanchez relies on indicates, at most, "the mere presence of a condition with no vocationally relevant impact," and that Mr. Sanchez mostly relies on evidence that postdates the date he was last insured. (Doc. 17 at 3-9).

At step two, an ALJ must provide "a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *4. In this evaluation, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." *Id.* While the Court may not reweigh the evidence or substitute its judgment for that of the ALJ, the Court must determine whether the ALJ's decision is supported by substantial evidence and whether the correct legal standards were applied. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir 2007).

    *1. Heart Condition*

Mr. Sanchez had a myocardial infarction in June 2009, and underwent cardiac catheterization, stent placement, and balloon angioplasty. (AR 366-67, 404-05). Mr. Sanchez was diagnosed with hypertension and coronary artery stenosis. (AR 368-72, 377). Mr. Sanchez contends his coronary artery disease was not cured by his 2009 surgery because, in 2012, he had an abnormal cardiac stress test, catheterization revealed moderate diffuse disease in the left anterior descending artery and in the right coronary artery, and an internal defibrillator was implanted due to dangerous arrhythmia. (AR 626, 628 640-41, 647, 660, 667). Therefore, Mr. Sanchez contends his

heart attack and ongoing coronary artery disease limited his ability to perform basic work activities. (Doc. 15 at 9).

In finding that Mr. Sanchez did not have any severe impairments relating to his heart condition, ALJ Meyer relied on evidence that Mr. Sanchez was stable after the surgery and that, by May 2010, he was able to exercise regularly and had not had any chest pain or shortness of breath. (AR 25-26). However, ALJ Meyer did not address evidence that after the procedure Mr. Sanchez was prescribed medications to treat unstable angina, hypertension, and high cholesterol, (AR 368-88), and that at follow up cardiology appointments he reported anxiety and fatigue and was diagnosed with sinus node dysfunction, (AR 378, 386-87, 504). ALJ Meyer's failure to discuss all of the medical evidence relating to Mr. Sanchez's impairments due to his heart surgery is legal error. *See* SSR 96-8p, 1996 WL 374184, at *7 (ALJ is required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

The Commissioner argues that the record supports a finding that Mr. Sanchez's heart condition was not severe during the relevant time period because none of his providers, including his cardiologist, placed limitations on him related to his coronary artery disease. (Doc. 17 at 4). First, this reason was not given by ALJ Meyer in his determination that Mr. Sanchez's heart impairments were not severe and, thus, is an improper *post hoc* rationalization of the ALJ's decision. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision."). Moreover, the fact that a doctor did not place limitations on a claimant is not the same as evidence of a claimant's ability to do work related activities. *See*

*Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) ("The absence of evidence is not evidence."). Therefore, the Court finds that ALJ Meyer erred in his consideration of the evidence relating to Mr. Sanchez's heart condition.

### 2. Hearing Impairments

In 2008, Mr. Sanchez was diagnosed with mild to severe high frequency sensorineural hearing loss in the right ear, moderate to severe high frequency sensorineural hearing loss in the left ear, tinnitus, and difficulty hearing in noisy environments. (AR 445). Mr. Sanchez reported that his hearing impairments affect his ability to concentrate. (AR 46, 72).

ALJ Meyer found these limitations did not significantly affect Mr. Sanchez's ability to work because "[t]he fact that the claimant's hearing loss did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." (AR 26). At step two, however, Mr. Sanchez is not required to show that he was prevented from performing his past work, but is only required to show that his impairments significantly limit his ability to do basic work activities. Moreover, ALJ Meyer's step two assessment should be limited to the medical evidence before him, and not based on Mr. Sanchez's previous ability to work. *See* SSR 85-28, 1985 WL 56856, at *4.

The Commissioner states that ALJ Meyer's conclusion is supported by the record because, in June 2011, a hearing examiner found that Mr. Sanchez's hearing loss did not affect his occupational and daily activities, and because no VA provider noted that Mr. Sanchez had hearing loss or found any related limitations. (Doc. 17 at 5) (citing AR 460, 439). This is another improper *post hoc* rationalization of the ALJ's decision since it

was not provided by ALJ Meyer as a reason for his decision. Therefore, the Court finds that ALJ Meyer's assessment of Mr. Sanchez's hearing impairments does not comply with relevant Social Security regulations.

### 3. Vision Impairment

Mr. Sanchez was diagnosed with diabetic retinopathy in January 2010, and his left eye vision was found to be threatened. (AR 437). ALJ Meyer reasoned that this did not constitute a severe impairment because Mr. Sanchez did not receive any treatment for it prior to the date he was last insured, and was not taking his insulin consistently "which is not what one would expect for a totally disabled individual." (AR 26).

At step two Mr. Sanchez's burden is *de miminis*, and he is not required to present evidence that he is a "totally disabled individual." In addition, Mr. Sanchez explained that treatment for his vision problems was delayed because the VA clinic was backlogged. (AR 437). The failure to follow prescribed treatment may be an appropriate basis to discount a claimant's complaints; however, the ALJ must follow a prescribed analysis. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). The ALJ must consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse. *Id.*; *see also* SSR 82-59, 1982 WL 31384, *2-4. ALJ Meyer's decision does not contain this analysis, which is legal error.

### 4. Hand Impairment

In October 2010, Mr. Sanchez was diagnosed with osteopenia throughout both hands and wrists, moderate degenerative joint disease in the right hand, minimal degenerative joint disease in the left hand, and extensive atherosclerotic calcifications in

the forearms. (AR 408). Mr. Sanchez reported that his osteopenia causes his fingers to lock up, pain prevents him from opening or closing his hands completely, he sometimes drops objects, and he cannot use his hands for repetitive actions. (AR 42-43, 46, 69-71).

ALJ Meyer found that Mr. Sanchez's impairments to his hands do not significantly limit his ability to perform basic work activities because he was able to move cabinets, reported the pain in his hands had improved, and declined a rheumatology consultation. (AR 26). Pursuant to SSR 85-28, ALJ Meyer's assessment should be limited to the medical evidence before him, and not based on the fact that Mr. Sanchez declined a consultation. Moreover, ALJ Meyer failed to explain how he resolved the inconsistencies in the record regarding Mr. Sanchez's limitations due to these impairments. *See* SSR 96-8p, 1996 WL 374184, at *7 (ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). Therefore, the Court finds that ALJ Meyer did not properly consider the evidence relating to Mr. Sanchez's hand impairments.

### 5. Mental Impairments

In December 2010, Mr. Sanchez reported having upsetting memories of his tour in Vietnam, problems with anger, sleep difficulties, and numbing of emotions. (AR 472). In June 2011, six months after the date he was last insured, psychologist Lori Martinez, Ph.D., diagnosed Mr. Sanchez with PTSD and a mood disorder, and assessed him with a global assessment of functioning ("GAF") score of 55, which indicates moderate difficulties in social, occupational, or school functioning. (AR 457); DSM-IV-TR at 32. In addition, Dr. Martinez opined that Mr. Sanchez's mental impairments "reduce his

efficiency and ability to perform occupational tasks at times during significant stress and feelings of depression." (AR 458).

At step two, the ALJ is required to assess a claimant's limitations from mental impairments using the "paragraph B" criteria of the mental disorders listings. SSR 96-8p 1996 WL 374184, at *4; *see also* 20 C.F.R. § 20 CFR 404.1520a; 20 C.F.R. pt. 404, subpt. P, app. 1. In a "paragraph B" analysis, the ALJ rates a claimant's degree of functional limitation in the areas of "activities of daily living; social functioning; [and] concentration, persistence, or pace," using a five point scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(3),(4). If the ALJ rates the claimant's degree of limitation in each of these categories as "none" or "mild," and finds the claimant has had no episodes of decompensation, the ALJ may conclude that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

Here, ALJ Meyer noted that Mr. Sanchez made numerous office visits for treatment for his mental symptoms and that he was diagnosed with PTSD. ALJ Meyer further noted that Mr. Sanchez had been assigned GAF scores of 65 and 85, and, therefore, found that Mr. Sanchez's "alleged limitations are not fully supported by the medical evidence." (AR 26-27). ALJ Meyer then considered the "paragraph B" criteria, and found that Mr. Sanchez had no or only mild limitations in each category, had no episodes of decompensation of extended duration, and as a result concluded that his impairments were not severe. (AR 27).

ALJ Meyer did not discuss Dr. Martinez's findings, such as her assignment of a GAF score of 55 or her finding that Mr. Sanchez's mental impairments affect his ability to work. The Commissioner claims that ALJ Meyer did not err in failing to consider this

16

evidence because it postdates the relevant time period. (Doc 17 at 8). ALJ Meyer did not offer this explanation, so it is an impermissible *post hoc* rationalization. Moreover, in determining functional limitations resulting from mental impairments, ALJs are required to evaluate "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1); *see also Carpenter*, 537 F.3d at 1269 (finding the ALJ erred by "fail[ing] to discuss all of the significantly probative evidence relevant to [the claimant's] mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence"). Therefore, the Court finds that ALJ Meyer failed to adequately address the evidence relating to Mr. Sanchez's mental impairments.

## V. Conclusion

For the foregoing reasons, the Court finds that ALJ Meyer erred at step two by applying the wrong legal standard and failing to properly consider the evidence. The Court does not address Mr. Sanchez's claim that ALJ Meyer erred in his credibility assessment because that claim may become moot upon remand.

**IT IS THEREFORE ORDERED** that Mr. Sanchez's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 15), is **GRANTED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE